# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | George M. Marovich | Sitting Judge If Other than Assigned Judge | Nan R. Nolan |
|---|---|---|---|
| **CASE NUMBER** | 01 C 9343 | **DATE** | 2/11/2003 |
| **CASE TITLE** | Calkins vs. Grossinger City Autocorp | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
       ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Plaintiff's motion for attorney's fees and costs is granted in part and denied in part [36-1]. All matters relating to the referral of this action having been resolved, the case is returned to the assigned judge. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required. | | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | | FEB 1 2 2003 | |
| | Notified counsel by telephone. | | | date docketed | 41 |
| | Docketing to mail notices. | | | | |
| | Mail AO 450 form. | | U.S. DISTRICT COURT | docketing deputy initials | |
| ✓ | Copy to judge/magistrate judge. | | | 2/11/2003 | |
| | | courtroom | 03 FEB 11 PM 5:33 | date mailed notice | |
| | cav | deputy's initials | | cav | |
| | | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

STEVE CALKINS,

    Plaintiff,

v.

GROSSINGER CITY AUTOCORP., INC.,
d/b/a GROSSINGER CITY TOYOTA and
BELL SERVICES, INC.,

    Defendants.

Case No. 01 C 9343

DOCKETED

FEB 1 2 2003

## MEMORANDUM OPINION AND ORDER

This case was referred to this Court for resolution of all post-judgment motions. Plaintiff Steve Calkins ("Calkins") has filed a motion for attorneys' fees and costs [36-1]. The parties agreed in the offer of judgment and Calkins' acceptance that briefing on the fee petition would include responses by defendants with no reply by plaintiff. The Court has carefully reviewed the parties' submissions and for the reasons set forth below, Calkins' motion is granted in part and denied in part.

## I. BACKGROUND

Calkins brought a six count complaint against defendant Grossinger City Autocorp, Inc. ("Grossinger") for alleged violations of the Federal Truth and Lending Act ("TILA"), the Federal Equal Credit Opportunity Act, Section 2C of the Illinois Consumer Fraud Act, and violation of Section 5/9-609 of the Illinois Uniform Commercial Code and against defendant Bell Services, Inc. ("Bell Services") for violations of the Fair Debt Collection Practices Act and common law trespass. In his complaint, Calkins alleged that he selected a Mercury Tracer to purchase from Grossinger. The retail installment contract allegedly disclosed that Harris Bank had agreed to finance the

purchase, but Grossinger had not in fact obtained financing for Calkins. Calkins alleged that after failing to assign the retail installment contract, Grossinger hired Bell Services to repossess the vehicle. Calkins further alleged that during the repossession, a Bell Services employee trespassed onto Calkins' property in the middle of the night, broke through a wooden alley gate and forced his way into a locked garage. Defendants denied the material allegations of Calkins' complaint.

After the parties engaged in limited discovery, briefed a motion to compel arbitration, and participated in one unsuccessful settlement conference, Calkins accepted defendants' joint offer of judgment of $20,000 plus reasonable attorney's fees to be determined by the Court. Calkins now moves for attorneys' fees in the amount of $23,804.00 and $150.00 in filing costs. Defendants do not dispute that Calkins is entitled to reasonable attorney's fees in this case but challenge the hourly rates and the time expended by Calkins' attorneys.[1]

## II. DISCUSSION

None of the parties to this case has indicated what methodology the Court should employ in determining the appropriate fee. The Court finds that the appropriate standard for determining a reasonable fee in this case is the same as that used under 42 U.S.C. § 1988. Zagorski v. Midwest Billing Services, Inc., 128 F.3d 1164, 1166 (7th Cir. 1997) (applying the § 1988 methodology to attorney's fees under the Fair Debt Collection Practices Act ("FDCPA") and noting that the language of the attorney's fees provision in TILA is identical to the parallel provision in the FDCPA). In calculating a reasonable fee, the Court first determines the lodestar amount by multiplying the reasonable number of hours worked by a reasonable hourly rate. McNabola v. Chicago Transit

---

[1] The Court notes that with the exception of the Fogle case cite by Grossinger, none of the parties have cited any case authority in support of their respective positions.

Auth., 10 F.3d 501, 518 (7th Cir. 1993). The reasonable hourly rate used in calculating the lodestar figure should be based on the appropriate market rate for the attorney's work. Id. at 519. "The market rate is 'the rate that lawyers of similar ability and experience in the community normally charge their paying clients for they type of work in question.'" Id. (quoting Eddleman v. Switchcraft, Inc., 965 F.2d 422, 424 (7th Cir. 1992)). "The attorney's actual billing rate for comparable work is 'presumably appropriate' to use as the market rate." People Who Care v. Rockford Bd. of Educ, 90 F.3d 1307, 1310 (7th Cir. 1996). The burden of proving the market rate is on the party seeking the fee award. Uphoff v. Elegant Bath, 176 F.3d 399, 407 (7th Cir. 1999). Once an attorney provides evidence establishing his market rate, the opposing party has the burden of demonstrating why a lower rate should be awarded. Id.

The Court begins by addressing the reasonableness of the hourly billing rates of Calkins' counsel. Calkins' counsel requests rates of $320 per hour for Lance Raphael, $165 per hour for Stacy Bardo, and $65.00 per hour for paralegals. In support of these rates, attorneys Raphael and Bardo submitted their own affidavits to the Court. In his affidavit, attorney Raphael states that since July of 1999, one hourly fee-paying client has paid attorneys in his firm their current hourly rates, but Raphael does not state what percentage of the firm's billable time is spent on this one client's work. Raphael also states that since January 1, 2002 his firm has charged consumers for reviewing documentation, investigating facts and performing legal research and an analysis of the consumers' claims on a non-contingent basis prior to accepting a case at the firm. Raphael has been paid hourly rates ranging from $320 to $360 and Bardo has been paid hourly rates ranging from $150 to $175 for such investigations. Once the initial review of a case is performed at the above hourly rates, the firm begins representation of its clients on a contingency basis with fees in large part sought under

fee-shifting statutes. Thus, it seems that most of Raphael's clients pay his firm their requested hourly rates for only an initial, small portion of the case and Raphael and his associates are usually compensated by court-awarded fees under fee-shifting statutes. The above evidence is not sufficient to establish that the requested rates are the actual billing rates.

Because Raphael appears to maintain a practice with few fee paying clients who are willing to pay his requested hourly rates for entire cases, the Court is unable to determine his and his associate's true billing rates. If the court is unable to determine the attorney's true billing rate, then the court should "look to the next best evidence of market rate–evidence of rates other attorneys in the area charge paying clients for similar work and evidence of fee awards the attorney has received in similar cases." Uphoff, 176 F.3d at 407.

Raphael did not submit any affidavits from other counsel practicing in the same market about what they charge paying clients for similar work, but he does offer evidence of fee awards that he received in four recent cases. Raphael states that his hourly rate of $320 has been preliminarily approved in a nationwide class action settlement, a statewide class action settlement under the Fair Debt Collection Practices Act decided on July 3, 2002, an individual consumer fraud case involving odometer fraud decided on August 9, 2002, and a motion for sanctions decided on June 14, 2002. Bardo's rate has been most recently preliminary approved at $175 per hour in a nationwide class action settlement and at $165 per hour for work on an individual consumer fraud case involving odometer fraud. By coming forward with this evidence of fee awards received by his counsel in recent similar cases, the Court concludes that Calkins has carried his burden of proving that his attorneys' market rates are those requested.

The burden now shifts to the defendants to show why a lower rate should be awarded. Inexplicably, defendants have failed to submit any evidence establishing the market rate for attorneys of Raphael's and Bardo's experience. Grossinger argues, however, that the hourly rate sought by Raphael should be reduced to a rate at, below or near the $185 hourly rate approved by the Seventh Circuit in the case of Fogle v. William Chevrolet/GEO, Inc., 275 F.3d 613 (7th Cir. 2001).

Fogle was a consumer fraud lawsuit against an automobile dealership in which the plaintiffs alleged violations of the federal truth-in-lending and odometer-tampering statutes as well as various Illinois state laws in the sale of two cars to them. After obtaining a favorable settlement, Fogle's counsel, Andy Norman, sought an award of attorney's fees and claimed any hourly rate of $310. The district judge found that Norman's performance was mediocre. Norman was "in the bottom-tier skill-wise of this specialty [consumer fraud litigation] based on his performance in this case" and $310 was not his real hourly fee. The judge cut Norman's fee to $185 and the Seventh Circuit affirmed. The Seventh Circuit noted that Norman had only a few paying clients and only two who had ever paid $310 an hour and those for only a few hours. Norman also submitted the affidavit of a lawyer who concluded that Norman's market value was $310. The Seventh Circuit found the lawyer's opinion groundless because he did not practice law in Illinois or in any federal court, did not live in Illinois, had not practiced law since 1990, and made no study of the Chicago consumer fraud litigation lawyer market. Given Norman's lack of evidence supporting his claimed market rate, the Seventh Circuit upheld the district judge's denial of an award of $310 an hour.

Fogle is distinguishable from the instant case in two important respects. In sharp contrast to Norman, Raphael has presented evidence of his market rate, namely evidence of fee awards he and his associate have received in similar cases. Moreover, unlike Norman's mediocre performance,

neither defendant challenges the quality of the representation provided by Calkins' lawyers in this case. Thus, the Court finds that defendants have not met their burden of showing that Calkins' counsel should be denied their requested hourly rate.

Defendants raise numerous challenges to the number of hours expended by Calkins' counsel on this litigation. Grossinger makes several specific objections to the number of hours billed by Calkins' attorneys. Grossinger first argues the 6.4 hours spent analyzing, drafting, and reviewing Calkins' complaint is unreasonable for a straightforward complaint. Grossinger maintains that is should have taken half the time to draft the complaint. The complaint is eleven pages long, includes six counts, and named two defendants. Six and a half hours to draft Calkins' initial complaint is not unreasonable.

Grossinger next challenges the number of hours spent on researching and drafting Calkins' response to Grossinger's motion to compel arbitration. Calkins' attorneys spent 40.5 hours researching and drafting his response to the motion to compel arbitration and 5 hours preparing a sur-reply which was never filed. The Court has reviewed Calkins' response to the motion to compel arbitration and agrees that the time spent on the response was unreasonable considering the uncomplicated nature of the subject matter and the firm's professed expertise in consumer rights litigation. The Court finds that 15 hours is reasonable for researching and drafting a response to the motion to compel arbitration. The Court determines that 13 hours at Bardo's hourly rate and 2 hours at Raphael's hourly rate should be allowed for preparing Calkins' response to the motion to compel arbitration. The Court agrees with Grossinger that the 5 hours spent preparing a surreply which was not filed should not be compensated.

Grossinger also argues that the 14.5 hours spent preparing an eleven page settlement demand letter prior to a settlement conference with the district court judge was excessive and unreasonable. While the Court acknowledges the importance of summarizing the relevant facts and law for the judge prior to a settlement conference, the amount of time spent preparing the settlement demand letter is excessive. Considering counsel's familiarity with the facts of this case and the relevant case law by this time, five hours at Bardo's hourly rate is more than a reasonable amount of time for such task in this situation.

Grossinger next asserts that it was unreasonable for both Raphael and Bardo to attend the settlement conference with Judge Marovich. According to Grossinger, this case was not difficult or complex enough to warrant two attorneys attending the settlement conference. Given the straight forward nature of this case and Raphael's specialization in this area of the law, it was unnecessary for Bardo to attend the settlement conference and her hours on this are cut.

Grossinger has made a number of other objections to alleged duplicative billing which do not warrant extended discussion. There is no basis to make a deduction for both Raphael and Bardo spending time analyzing and reviewing Bell Services' answer to the complaint. The fact that both attorneys assigned to this case billed minimal time on this task does not suggest duplication and is reasonable. The Court reduces the time spent by Bardo on February 27, 2002 for drafting, revising and editing a response to a motion to compel arbitration by 1.7 hours. The Court is not convinced that the remaining allegations of double billing by Grossinger have merit and declines to further reduce the fees sought.

Grossinger further argues that Calkins' counsel should not be compensated for time spent complying with Local Rule 54.3 because that work was unreasonable and unnecessary. Grossinger

maintains that after Calkins' acceptance of the offer of judgment, he should have immediately filed his petition for attorney's fees and costs. The Court rejects Grossinger's argument. Nothing in the offer of judgment or any order by District Judge Marovich excused compliance with Local Rule 54.3. In fact, Judge Marovich granted Calkins' motion to compel which sought defense counsel's compliance with Local Rule 54.3. Local Rule 54.3 serves an important purpose and Calkins properly attempted to comply with it. "Local Rule [54.3] aims to promote 'amicable resolution' by encouraging the parties to define their areas of actual disagreement regarding fee awards." Tenner v. Zurek, 168 F.3d 328, 331 (7th Cir.1999).

Moreover, the Seventh Circuit has held that time spent preparing a fee petition is compensable as long as the time spent is not disproportionate to the time spent on the merits of the case. Ustrak v. Fairman, 851 F.2d 983, 988 (7th Cir. 1988). Calkins' attorneys spent 15.5 hours preparing the fee petition, attempting to comply with Local Rule 54.3, and preparing a motion to compel defense counsel's time records as required by Local Rule 54.3. Calkins' attorneys spent almost 130 hours litigating the case. The claimed 15.5 hours in connection with the preparation of the fee petition is excessive given the Seventh Circuit's reduction of attorney's fees requests in several cases involving a similar number of hours litigating the merits of the case. See Small v. Richard Wolf Medical Instruments Corp., 264 F.3d 702, 708 (7th Cir. 2001)(upholding district court's reduction from 12 hours to 1.6 hours time expended preparing fee request in light of 121.4 hours spent litigating the merits of the case); Uphoff, 176 F.3d at 411 (affirming reduction from 9.9 hours to 1.6 hours time spent preparing attorney's fee motion where plaintiffs' attorneys spent just under 100 hours litigating the merits of the case). The Court finds 4.1 hours reasonable for the preparation of the request for attorney's fees. This amount of time includes the time spent by

Calkins' counsel compelling defense counsel's compliance with Local Rule 54.3. The Court will allow 4.1 hours of attorney time at Bardo's hourly rate of $165.[2]

Finally, the Court allows the $150 filing fee sought by Calkins. 28 U.S.C. § 1920(1).

### III. CONCLUSION

Consistent with this opinion, counsel are directed to calculate the specific amount of attorney's fees awarded and jointly inform the Court of that amount by letter on or before February 21, 2003. Thereafter, each defendant shall pay one half of the fees and costs awarded.

ENTER:

*Nan R. Nolan*
Nan R. Nolan
United States Magistrate Judge

Dated: Feb 11, 2003

---

[2] Bell Services and Grossinger also object to the fee award sought by Calkins' attorneys by simply comparing the number of hours spent by Calkins' attorneys to the number of hours spent by defense counsel. Defense counsel has failed to provide legal support for their argument that evidence of fees of other parties is sufficient to establish that plaintiff's hours are excessive, and the Court is under no duty to research and analyze the issue for the parties. United States v. Amerson, 185 F.3d 676, 689 (7th Cir.), cert. denied, 528 U.S. 1029 (1999) ("Given our adversarial system of litigation, it is not the role of this court to research and construct the legal arguments open to parties, especially when they are represented by counsel."). Moreover, the Seventh Circuit has noted the limited relevance of comparing plaintiff's and defendant's attorneys' fees. Mirabal v. General Motors Acceptance Corp., 576 F.2d 729, 731 (7th Cir. 1978). Thus, the Court declines to reduce Calkins' counsel's fees on this basis.